1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| DONNA R. BERNARD, | Case No. CV 13-1266 (SH) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and for Supplemental Security Income.  Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned.  The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The plaintiff and the defendant have filed their pleadings (Brief in Support of Complaint for Review of Social Security

Decision ["Plaintiff's Brief"]; Defendant's Motion in Opposition to Plaintiff's Brief in Support of Brief ["Defendant's Brief"]; Plaintiff's Reply Brief to Defendant's Brief in Opposition ["Plaintiff's Reply"]), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On January 7, 2011, plaintiff Donna Bernard filed an application for a period of disability or Disability Insurance Benefits. On February 2, 2011, plaintiff filed an application for Supplemental Security Income. Both applications alleged an inability to work since November 22, 2010, due to a back injury. (See Administrative Record ["AR"] 89-91, 94-98, 102-11). On November 14, 2011 (following a hearing on November 7, 2011, see AR 46-60), an Administrative Law Judge ("ALJ") issued a decision. The ALJ determined that plaintiff had severe impairments -- "degenerative disc disease and collapse at L5-S1 status post 2006 laminectomy and diskecotomy and 2011 anterior diskectomy interbody fusion, and carpal tunnel syndrome status post releases" -- but found that plaintiff was not disabled within the meaning of the Social Security Act. (See AR 13-18).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 1-5), plaintiff filed this action in this Court.

Plaintiff makes four challenges to the 2011 Decision. Plaintiff alleges the ALJ erred in (1) failing to consider all of plaintiff's severe impairments, (2) failing to conduct a proper evaluation of plaintiff's ability to perform past work; (3) failing to properly evaluate plaintiff's credibility; and (4) failing to consider the opinion of a medical consultant.

**DISCUSSION**

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to consider all of plaintiff's severe impairments, specifically, plaintiff's carpal tunnel syndrome, shoulder pain, abdominal pain and gastrointestinal distress (diverticultitis).  Defendant argues that the ALJ found that plaintiff's carpal tunnel syndrome was a severe impairment, that the ALJ properly found that plaintiff's  gastrointestinal distress was not a severe impairment, and that the ALJ properly considered all of plaintiff's impairments.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical and mental ability to do work activities."  20 C.F.R. § 404.1521(a).  "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ also must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity."  Id.  An impairment or combination of impairments is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on a individual's ability to work.'"  Id.; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).

With respect to plaintiff's carpal tunnel syndrome, as plaintiff concedes, the ALJ found that plaintiff's carpal tunnel syndrome was a severe impairment.

With respect to plaintiff's shoulder pain (AR 223 [notation on medical record, dated May 10, 2011, that plaintiff has left shoulder pain]; AR 222 [notation on phone message to medical provider, dated June 6, 2011, that: "[Plaintiff] wants referral for MRI of both shoulders.  She still has pain and tingling feeling down her hands."]), there was no basis for the ALJ to find plaintiff's shoulder pain severe since, as noted by the ALJ, an X-ray of plaintiff's left shoulder on May 10, 2011 was normal (see AR 17, citing AR 252), an x-ray of plaintiff's right shoulder on March 3, 2009 was normal (see AR 296),

and there was no indication that plaintiff's shoulder pain was long-term or had any effect on plaintiff's ability to work.

With respect to plaintiff's abdominal pain and gastrointestinal distress (AR 227-33 [notations in medical records, dated April 26, 2010, June 13, 2010, June 21, 2010, June 25, 2010, July 8, 2010, September 7, 2010, and September 26, 2010, of plaintiff experiencing abdominal pain and gastrointestinal distress]), the ALJ did not need to discuss them because there was no indication that plaintiff's abdominal pain and gastrointestinal distress were long-term or had any effect on plaintiff's ability to work. See Vincent v. Heckler, 739 F.2d 1393, 1996 (9th Cir. 1984)("The Secretary, however, need not discuss *all* evidence presented to her. Rather, she must explain why "significant probative evidence has been rejected.'"); 20 C.F.R. §§ 404.1521(a), 416.921(a).

## ISSUE NO. 2:

Plaintiff asserts that the ALJ improperly determined that plaintiff could perform her past relevant work as a clerical worker, because the ALJ solely considered the job description contained in the Dictionary of Occupational Titles and did not consider the testimony of a vocational expert. Defendant asserts that the ALJ properly found that plaintiff was able to perform her past relevant job as actually performed.

In the Decision, the ALJ found that plaintiff had the residual functional capacity ("RFC")[1] to perform the full range of light work. (AR 16-17). The ALJ found that plaintiff could perform her past relevant work as a clerical worker:

> The claimant describes her past work at a warehouse and office. The
> Dictionary of Occupational Titles defines an office helper (DOT No.
> 239.567-010) as involving light, unskilled work with SVP 2. [¶] In
> comparing the claimant's residual functional capacity with the physical and

_____

[1] The RFC is the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).

mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  (AR 18).

Contrary to plaintiff's assertion, the ALJ properly considered the physical and mental demands of plaintiff's actual past work as a clerical worker.  See 20 C.F.R. § 404.1560(b) ("We will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work."); 20 C.F.R. § 416.960(b) (same); Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986) ("To determine whether a claim has the residual functional capacity to perform his past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with his present capacity.").

The ALJ properly relied on plaintiff's statements about her past clerical work -- plaintiff stated that her office work job involved "answer[ing] phones, paper work" while sitting eight hours a day, and lifting less than 10 pounds frequently (see AR 122) -- in assessing the physical and mental demands of that work.  See Social Security Ruling 82-62 ("The claimant is the primary source for vocational documentation, and statements by the claimants regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work").

While plaintiff focuses on other past jobs -- warehouse worker and driver/warehous/counter person -- and claims that the warehouse work and office work were "more of a composite job" (see Plaintiff's Brief at 4, 6, 5; Plaintiff's Reply at 2-3) -- plaintiff clearly stated that the warehouse work and office work were separate jobs (AR 50, 121-22).  Plaintiff failed to show that her RFC prevented her from doing her past clerical work.  See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001)("At Step Four, claimants have the burden of showing that they can no longer perform their past relevant work.").  Thus, the ALJ did not err in finding that plaintiff can perform her past clerical

work based on the comparison between her RFC and the physical and mental demands of such work.

Contrary to plaintiff's assertion, the ALJ properly relied on the description of an office helper in the Dictionary of Occupational Titles ("DOT")[2] in the determination of whether plaintiff could perform her actual past relevant work as a clerical worker (see 1 AR 46-48).  See 20 C.F.R. § 404.1560 (b)(2) ("We may use the services of vocational experts . . . or other resources, such as the "Dictionary of Occupational Titles" . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. . . ."); 20 C.F.R. § 404.960(b)(2) (same).

**ISSUE NO. 3:**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's testimony.  Defendant argues that ALJ provided valid reasons for finding plaintiff not fully credible.

---

[2]     The following paragraph is located under the description of the duties of an office helper contained in DOT 239.567-010, as follows:
STRENGTH: Light Work – Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects.  Physical demand requirements are in excess of those for sedentary work.  Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. (Emphasis added).

At the administrative hearing on November 7, 2011, plaintiff testified that prior to her back surgery in January 2011 she had weakness, pain, numbness and tingling in her right leg.  She testified that she now has more pain, and that both her right and left legs bother her.  She testified that she has headaches every day.  She testified that she takes 750 mg of hydrocodone (Vicodin) for pain, that she has needed to take it every week, and that she has taken more than four in a day (she was about to run out of pain medicine).  She testified, "I try not to take it because I don't want to get hooked on it, when I really, really need it that's when I take it."  She testified that her pain level was five or more without any medication, and that her pain level was about three with medication.  (See AR 50-55, 57).

Plaintiff testified that she could stand comfortably for about 20 to 25 minutes before experiencing pain at a level of eight or nine.  She testified that the most strenuous thing she does is wash clothes, that she does most of the cooking, and that she spends most of the day lying down.  She testified that she could not work in an office because of her hands (due to carpal tunnel syndrome for which she had a surgery on each hand in 2005 or 2006) and her shoulders.  (See AR 55-57, 59-60).

While the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" his finding plaintiff could perform light work (AR 17).  The ALJ wrote:

> The medical records is (sic) minimal and any available evidence provides little
> support for the claimant's allegations she cannot work at a least (sic) the light
> level. [¶] During a November 2010 consultation, the claimant reported a 7 year
> history of progressive low back pain status post 1996 cervical discectomy and
> interbody fusion (Exhibit 6F/61) and 2006 lumbar laminectomy and discectomy.
> (Exhibit 6F/48).  A September 2010 lumbar MRI had revealed severe degenerative

disc disease and collapse of L5-S1 with Modic changes of L5-S1 endplates. X-rays of the lumbar spine showed no identifiable subluxation and normal lordosis. In January 2011, the claimant underwent a L5-S1 diskectomy and interbody fusion. The operation went well and the claimant was discharged home. (Exhibit 6F/59, 63). [¶] A May 2011 X-ray of the left shoulder was completely normal. (Exhibit 6F/34). A June 2011 cervical spine MRI found nothing more than mild multilevel degenerative changes. (Exhibit 6F/29-30). During a June 2011 follow-up, the claimant demonstrated limited range of motion of the neck and paraverterbral tenderness, paraspinal tenderness and paraspinal spasm of the low back, but negative straight leg raises. The motor examination was normal with full motor strength and the sensory exam was normal to soft touch. Reflexes were symmetrical throughout the extremities. The claimant, in fact, ambulated with an unremarkable gait. (Exhibit 7F/3-4). [¶] There are no other treatment records documenting the claimant's progress or supporting her contentions that her condition is debilitating. As noted above, any existing evidence indicates nothing more than mild clinic findings to support the conclusion the claimant is capable of at least light work. [¶] The claimant's own statements, moreover, supporting (sic) the finding the claimant is capable of performing substantial gainful activity at the residual functional capacity set forth. She testifies she takes pain medications only when she "really, really needs it." She claims she cannot perform office work due to hand problems; she relates she had carpal tunnel surgery in 2005 or 2006. Note that are no medical records or notations by treating physicians to this claim. When asked whether the surgery improved her condition, the claimant declined to answer directly, broadly stating only that she still had pain. It is noted that following these purported 2005 or 2006 surgeries, the claimant worked for a number of years at a warehouse frequently lifting boxes of 10 pounds, using machines and equipment, and constantly handing objects and reaching. (Exhibit 7E/5). (AR 17)

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain.  Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so.  Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence supported the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not fully credible.[3]  One reason given by the ALJ -- the mild objective clinical findings (see AR 247-48, 252, 277-78, 281-82, 290-91) -- was supported by the record.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) .

Moreover, another reason given by the ALJ -- the fact that plaintiff's treating physician did not impose any functional limitations, or state that she was limited to less than light work -- was a reliable basis for partially rejecting plaintiff's credibility.  See Carmichael v. Commissioner, Social Security Administration, 533 F.3d 1155, 1161 (9th Cir. 2008); Johnson v. Shalala, 60 F.3d 1928, 134 (9th Cir. 1995).

Finally, another reason given by the ALJ -- inconsistencies in plaintiff's testimony and/or inconsistencies between plaintiff's testimony and her conduct and/or non-

---

[3]     The Court will not consider reasons for finding plaintiff not fully credible that were not cited by the ALJ in the Decision.  See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

responsiveness -- was supported by the record (see AR 54 [plaintiff's testimony that she takes pain medication "when [she] really, really need[s] it]"; compare AR 56 [plaintiff's testimony that she could not do office work now because of problems with her hands years after carpal tunnel surgeries] and AR 50, 120-21 [plaintiff's testimony and statements that for about five years following her carpal tunnel syndrome surgeries she worked in a warehouse using her hands and frequently lifting boxes and parts weighing ten pounds]; and see AR 57 [when asked whether her carpal tunnel syndrome surgery worked, plaintiff responded, "I'm still having a lot of pain in them."] ).  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).[4]

**ISSUE NO. 4:**

Plaintiff contends that the ALJ failed to properly determine plaintiff's RFC because the ALJ did not consider the opinions of J. Akers, a medical consultant. Defendant asserts that the ALJ properly determined plaintiff's RFC.

On April 11, 2011, J. Akers, a State agency medical consultant, prepared a Physical Residual Functional Capacity Assessment, based on his review of plaintiff's medical records.  (See AR 201-06).  J. Akers opined that plaintiff had the following: certain exertional limitations (plaintiff could occasionally lift 10 pounds, could frequently lift and/or carry less than 10 pounds, could stand and/or walk at least 2 hours in an 8-hour workday, could sit less than about 6 hours in an 8-hour workday, and was limited in her lower extremities with respect to pushing and/or pulling); certain postural limitations (occasional climbing, balancing, stooping, kneeling, crouching, crawling); no manipulative limitations; no visual limitations; no communicative limitations; and no

---

[4]     Even assuming arguendo that the ALJ's finding that plaintiff was not fully credible based on her inconsistencies (or on the ALJ's mischaracterization of plaintiff's testimony) was not proper, as plaintiff contends, the Court's determination above that the ALJ's other reasons for finding plaintiff partially not credible were proper renders such error harmless.  See Carmichael v. Commissioner, Soc. Sec. Administration, supra, 553 F.3d at 1162-63.

environmental limitations.  (See AR 202-04, emphasis added).  Under Additional Comments, J. Akers wrote that plaintiff should be able to perform sedentary work by November 2011.  (See AR 205).

As plaintiff notes, the ALJ did not address J. Akers' opinions about plaintiff's RFC.  However, had the ALJ considered the limitations expressed by J. Akers, the ALJ would have nonetheless found that plaintiff could perform her past relevant work of clerical worker as actually performed (see AR 18; DOT No. 239.567-010).  See Social Security Ruling 82-61 ("[A] claimant will be found to be 'not disabled when it is determined that he or she retains the RFC to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.");  Pinto v. Massanari, supra ("The regulations advise an ALJ to first consider past work as actually performed, and then as usually performed.").

Thus, the ALJ's failure to address or consider the opinions of J. Akers was harmless.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)(stating that an ALJ's error is harmless "when it is clear from the record that . . . it was 'inconsequential to the ultimate nondisability determination.'").

## ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: October 31, 2013

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE